IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CODY A.,[1] | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:19-CV-733 |
| | ) |
| ANDREW SAUL, COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Cody A. ("Cody") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Cody alleges that the Administrative Law Judge ("ALJ") erred by failing to properly consider his mental impairments and by improperly assessing his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Cody's Motion for Summary Judgment (Dkt. 11) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Cody was no longer disabled under the Act. Mastro v.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

1

Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Cody filed for SSI and DIB on March 17, 2016, claiming that his disability began on March 1, 2015. R. 15. The state agency denied Cody's application at the initial and reconsideration levels of administrative review. R. 58–111, 131–44.  On May 15, 2018, ALJ Geraldine Page held a hearing to consider Cody's claim for SSI and DIB. R. 29–57.  Counsel represented Cody at the hearing, which included testimony from vocational expert Barry Hensley, Ph.D. Id.

On October 3, 2018, the ALJ entered her decision analyzing Cody's claim under the familiar five-step process[2] and denying his claim for benefits. R. 15–24. The ALJ found that

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

Cody suffered from the severe impairments of major depressive disorder, anxiety disorder, and alcohol abuse with attendance in detox program and 12-step rehabilitation. R. 17. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18–20. The ALJ concluded that Cody retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: avoid automobile exhaust fumes; understand, remember, and carry out simple instructions in repetitive, unskilled work; attend, persist and concentrate for two-hour segments with normal breaks as allowed by the employer with the ability to complete a normal workday and workweek; no interaction with the general public; occasional interaction with coworkers and supervisors; can respond appropriately to supervisions, coworkers and usual work situations. R. 20.

The ALJ determined that Cody can perform his past relevant work as a warehouse worker, and that he could also perform jobs that exist in the national economy such as domestic laundry worker, hand packager and production helper. R. 23–24. Thus, the ALJ concluded that Cody was not disabled. R. 24. Cody appealed the ALJ's decision and the Appeals Council denied his request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Mental Impairments

Cody alleges that the ALJ did not properly address his mental impairments as required by SSR 96-8P. Specifically, Cody asserts that the ALJ failed to explain how she determined that he can attend, persist and concentrate for two-hour segments with normal breaks and complete a

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

normal workday and workweek. Pl. Br. Summ. J. p. 14. Cody also asserts that the ALJ did not explain how the restrictions of no interaction with the general public but occasional interaction with co-workers and supervisors accommodates his moderate limitations with interacting with others. Id. Cody alleges that the ALJ did not address his ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 16.

SSR 96-8P[3] requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2, 1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

I find that the ALJ's decision adequately explains why a restriction to repetitive, unskilled work with simple instructions; attend, persist and concentrate for 2 hour segments with normal breaks; no interaction with the general public and occasional interactions with coworkers and supervisors properly accommodates Cody's mental impairments.

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

4

In <u>Mascio v. Colvin</u>, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." <u>Id.</u> at 638.  The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638. The court found error in <u>Mascio</u> because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The <u>Mascio</u> decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, <u>Mascio</u> underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in <u>Mascio</u>, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in <u>Shinaberry v. Saul</u>, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that <u>Mascio</u> "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." <u>Id.</u> (quoting <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the

5

"medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Cody's limitations with concentration, persistence and pace, he can perform repetitive, unskilled work with simple instructions and attend, persist and concentrate for 2-hour segments with normal breaks. The evidence further supports the ALJ's conclusion that Cody's moderate impairment with social interaction is properly accommodated by work with no interaction with the general public and occasional interactions with coworkers and supervisors.

In step three of the sequential process, the ALJ determined that Cody had a moderate limitation with interacting with others, but also noted that Cody appeared pleasant and cooperative during medical appointments, with normal eye contact, speech, and overall behavior. R. 19. The ALJ also recognized that Cody reported socializing with family and friends and interacting with the public to some extent when shopping for groceries and necessities. Id.

Regarding concentration, persistence and pace, the ALJ noted that Cody had a moderate limitation, and that on a few occasions he was noted to have overt difficulty in this area. R. 19. The ALJ found that Cody was not observed to have cognitive deficits during his medical appointments and was consistently described as alert and oriented. The ALJ also noted that Cody reported daily activities that require some concentration and persistence, such as driving, preparing simple meals, and counting change. R. 19.

6

In step four of the decision, the ALJ noted Cody's subjective allegations of inability to work due to anxiety and panic attacks, depressive episodes, difficulty concentrating, focusing and remembering. R. 21.  He obtained his GED and previously worked changing oil in a lube shop. R. 34–35.  Cody reported that he stopped working due to his mental conditions and stays to himself and tries to avoid other people. Id

The ALJ reviewed Cody's medical records which reflect a history of severe anxiety, panic attacks, depression and alcohol abuse. In December 2015, Cody's records reflect that he was treated with Xanax, reported "crippling anxiety" in social situations, and struggled to maintain control over his anxiety. R. 378.  Upon examination, Cody had normal speech, intact thought processes, cooperative attitude, but an anxious mood. R. 378.  In February 2016, Cody presented to the Emergency Department with worsening anxiety, difficulty sleeping and concentrating, and acknowledged abusing alcohol previously. R. 358. Cody was voluntarily admitted to a rehabilitation program, where he was diagnosed with severe single episode major depressive disorder, generalized anxiety disorder and severe alcohol use disorder. R. 346.  Cody was discharged from rehab three days later. Id.

Cody's physicians prescribed medication for his anxiety and depression and encouraged him to follow through with alcohol abstinence programs. R. 387, 384. In August 2016, Cody was scheduled for weekly individual therapy to decrease his anxiety, but he failed to attend. R. 434–36.

Cody sought treatment with New Horizons Healthcare on August 19, 2016, and related persistent anxiety that was much worse in public settings, depression, panic attacks, fatigue, lack of motivation, and difficulty sleeping. R. 397.  Cody admitted drinking 6-18 beers per night and not attending alcohol abuse treatment programs. Id. Upon examination, Cody had a sad mood

7

and affect, but was alert and oriented with clear speech, good eye contact, intact cognition, intact recent /remote memory, insight and judgment. Id.  Cody followed up with New Horizons Healthcare on January 17, 2017, and noted occasional panic attacks and depression.  He admitted smoking marijuana and drinking alcohol every night. R. 420.  Jessica Gillespie, P.A., diagnosed depressive disorder, insomnia, anxiety and drug or alcohol abuse, and adjusted Cody's medications. R. 421. Cody's records reflect that he continued to complain of depression and anxiety with sleep and appetite disturbance through April 2018. R. 439, 442.

On June 24, 2016, state agency psychologist Howard S. Leizer, Ph.D., reviewed Cody's records and determined that his anxiety disorders and ADD/ADHD are severe impairments that cause mild difficulty with activities of daily living and maintaining concentration, persistence or pace; and moderate difficulties with maintaining social functioning. R. 76. Dr. Leizer found that Cody had moderate limitations with ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact with the general public; get along with co-workers or peers; perform at a consistent pace; and complete a normal workday and workweek without interruptions from his psychologically-based symptoms. R. 78–79.  Dr. Leizer concluded that despite his limitations, Cody is capable of understanding and remembering simple, one and two-step instructions, work-like procedures and locations; of attending to simple work tasks for 2-hour periods over a normal workday, with occasional interruptions; adhere to basic standards of neatness; and complete simple 1-2 step tasks without difficulty. Id.

On October 24, 2016, state agency psychologist Daniel Walter, Psy.D., reviewed Cody's records and determined that Cody could perform work with the same restrictions set forth by Dr. Leizer above. R. 90–93.  Dr. Walter found that Cody retained the mental capacity to understand

8

and remember simple instructions, concentrate and persist at simple tasks, interact appropriately in low stress relationships and follow usual work routines, schedules and procedures. R. 90.

The ALJ reviewed the opinions of Drs. Leizer and Walter and gave them great weight, noting that the medical evidence supports Cody's ability to perform simple, unskilled work tasks. R. 22. The ALJ also concluded that a limitation of no public interaction is reasonable given Cody's consistent complaints of anxiety.

Overall, the ALJ found that Cody's mental status findings do not support a complete inability to perform work activity. The ALJ noted that Cody's records reflect consistent complaints about symptoms related to anxiety and depression, and lengthy treatment history for anxiety and depression, including counseling, medication and inpatient detoxification programs. R. 22. The ALJ found, however, that the evidence did not support the severity of Cody's alleged symptoms. The ALJ noted that Cody's mental status findings were generally benign other than some anxious tendencies, and he did not appear to have difficulty interacting with examining or treating providers. Id. Reviewing the medical records and state agency opinions, the ALJ concluded that Cody could perform simple, unskilled work, attend and concentrate for two-hour segments, have no interaction with the general public and occasional interaction with coworkers and supervisors. R. 20. The ALJ noted that no opinions in the record suggest greater mental limitations than those included in Cody's RFC. R. 22.

Cody asserts that the ALJ did not properly explain how she determined that he can attend, persist and concentrate for two-hour segments with normal breaks and can complete a normal workday. Pl. Br. Summ. J. p. 14. Cody recognizes that the ALJ adopted this restriction from the opinions of Drs. Leizer and Walter, both of whom determined that Cody can "attend to simple work tasks for 2-hour periods over a normal workday, with occasional interruptions." R. 22, 78,

93. However, Cody asserts that Drs. Leizer and Walter's use of the term "occasional interruptions," is undefined and thus does not support the ALJ's RFC limitation of "two-hour segments with normal breaks." Cody asserts that this discrepancy amounts to inadequate explanation of the ALJ's finding, warranting remand of the case. I disagree.

The ALJ is not required to adopt wholesale every portion of a physician opinion given great weight. See Torres v. Saul, No. 2:19-cv-2000, 2020 WL 6264985, at * 11 (D.S.C. July 22, 2020) (Even when an ALJ gives considerable weight to an opinion, he is not required to adopt an opinion wholesale.) Nor is the ALJ required to provide a specific explanation for her decision to include "normal breaks," rather than "occasional interruptions" in the RFC. While the ALJ must include a narrative discussion describing how the evidence supports her conclusions when developing the RFC, "it is unreasonable to expect that the ALJ will recite every recommendation in every opinion and provide different reasoning for accepting or rejecting each portion." Moore v. Saul, No. 20-1260, 822 Fed. Appx. 123, 186 (4th Cir. Aug. 26, 2020). Here, the ALJ gave great weight to Drs. Leizer and Walter's opinions, and explained that "the evidence supports the claimant's ability to perform simple, unskilled work tasks." The ALJ developed the specific RFC limitation of performing simple, unskilled work and concentrating for 2-hour periods over a normal workday, with normal breaks, after considering not only the physician opinions, but also the medical evidence and Cody's allegations.

Cody also asserts that the ALJ's finding that he can "perform" work over an eight-hour day is not the same as "sustaining" work over an eight-hour day. Pl. Br. Summ. J. p. 16. Both Drs. Leizer and Walter concluded that despite his limitations, Cody could follow usual work routines, schedules and procedures, and attend to simple work tasks for 2-hour periods over a normal workday. R. 78, 93. The ALJ gave these opinions great weight, and together with the

10

other evidence in the record, concluded that Cody could complete a normal workday and workweek. Cody does not point to any evidence in the record that contradicts this finding, nor does he assert that the ALJ failed to consider any treatment records, medical evidence, or subjective complaints establishing that he could not sustain work for an eight-hour day.

Cody also asserts that the ALJ fails to explain how a limitation of no interaction with the general public and occasional interaction with supervisors and co-workers accommodates his moderate limitations with interacting with others. Pl. Br. Summ. J. p. 20. The ALJ discussed Cody's subjective complaints, the medical history and the opinion evidence in her decision. The ALJ gave great weight to the physician opinions that Cody had moderately limited ability to interact with the general public and get along with coworkers or peers, but not significantly limited ability to deal with supervisors and maintain socially appropriate behaviors. Having considered the evidence, the ALJ determined that Cody had a moderate limitation with social interaction and should have no interaction with the general public, but was capable of occasional interaction with coworkers and supervisors. The ALJ explained that Cody alleged significant anxiety in dealing with the general public but had no objective difficulty interacting with the medical treatment providers. The ALJ provided support for her reasoning through references to Cody's treatment notes, his testimony and the medical opinions. Notably, no other treating, examining or reviewing physicians assessed more restrictive non-exertional limitations than those set forth in the RFC.

The ALJ provided the detailed assessment at Step 4 of the sequential process that is called for in SSR 96-8P. The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in her discussion of the medical and non-medical evidence, Cody's alleged symptoms, and the medical

11

opinions of record. Id. Because I am not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Assessment of Plaintiff's Allegations

Cody also asserts that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 19–21. Cody claims that the ALJ erred by finding that his subjective allegations of symptoms related to anxiety and depression were not as severe as alleged because they were not supported by the objective evidence. Specifically, Cody asserts that his mental status findings reflect severe anxiety, difficulty concentrating, fears of leaving home, one panic attack per day, and moderately severe depression upon testing. Pl. Br. Summ. J. p. 20. Notably, the symptoms and records cited by Cody in this section reflect his subjective allegations. The ALJ recognized these allegations and Cody's lengthy treatment history for anxiety and depression, but also noted that his mental status findings were generally benign other than some anxious tendencies, and he did not have difficulty interacting with his examining or treating sources. R. 22. Overall, the ALJ determined that Cody's objective findings were not of the same degree of severity as his subjective allegations. Id.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3; §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work.

12

Id.; §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Here, the ALJ followed the two-step analysis to consider Cody's subjective allegations and found that they were not entirely consistent with the medical evidence in the record. Cody does not identify any subjective complaints that the ALJ failed to consider, but simply asserts that the ALJ erred by concluding that his mental status findings were "generally benign" and thus did not support the severity of his alleged symptoms. Essentially, Cody asks this court to re-evaluate his subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal. The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Having reviewed the record, I find that the ALJ's decision is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Cody's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: February 18, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge