IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CODY A., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:19-CV-733 |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on February 18, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Cody A. ("Cody") has filed objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Cody filed applications for disability insurance benefits and supplemental security income on March 17, 2016, alleging disability beginning on March 1, 2015. Cody was 25 years old at the alleged onset date. He seeks disability based on major depressive disorder, anxiety disorder, and alcohol abuse. The ALJ found that his impairments were severe under the

regulations, but that none of them met or medically equaled a listed impairment.[1] The ALJ found that Cody had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with additional nonexertional limitations. A vocational expert testified that Cody could do jobs such as domestic laundry worker, hand packager, and production helper. The ALJ concluded that there was work in the economy for Cody and therefore he was not disabled. R. 15-24. The Appeals Council denied Cody's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Cody has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate

---

[1] The ALJ also found that Cody's other alleged impairments of obesity and hypertension were non-severe, and Cody does not object to that finding.
[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

> judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine <u>de novo</u> any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" <u>de novo</u> review is not required. <u>Diprospero v. Colvin</u>, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting <u>Howard Yellow Cabs, Inc. v. United States</u>, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." <u>Roach v. Gates</u>, 417 F. App'x 313, 314 (4th Cir. 2011). <u>See also</u> <u>Camper v. Comm'r of Soc. Sec.</u>, No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), <u>aff'd</u>, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); <u>Midgette</u>, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report

3

be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence

4

supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[3]

Cody makes the following objections: (1) the magistrate judge erred when he concluded that the ALJ's assessment of Cody's RFC adequately accounted for his mental impairments; (2) the magistrate judge erred when he determined that the ALJ properly assessed Cody's subjective allegations of disability.

---

[3] Detailed facts about Cody's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 19) and in the administrative transcript (ECF No. 8) and will not be repeated here except as necessary to address his objections.

### A. Residual Functional Capacity

The residual functional capacity ("RFC") assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[4] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. The limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

At Step 4, the adjudicator should consider the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reported daily activities, lay evidence,

---

[4] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, the need for a structured environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The ALJ in this case first looked at whether Cody had an impairment that met or equaled a listed impairment and did so by examining the "B" and "C" criteria set out in the listings. R. 18-20. The ALJ found that Cody had a moderate limitation in his ability to interact with others, which referred to his capacity to relate to and work with supervisors, coworkers, and the public. R. 19. The ALJ also found he had a moderate limitation in his ability to concentrate, persist, or maintain pace, which referred to his capacity to focus attention on work activities and stay on task at a sustained rate. Id. When someone has a moderate limitation, it means that the person has a fair ability to function independently, appropriately, and effectively, on a sustained basis, in the area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2).

In doing the RFC assessment at Step 4, the ALJ summarized Cody's subjective complaints and reviewed the medical evidence in the record and the opinions of the state agency psychological consultants. The ALJ found that Cody could understand, remember, and carry out simple instructions in repetitive, unskilled work and could attend, persist, and concentrate for two-hour segments with normal breaks as allowed by the employer, with the ability to complete a normal workday and workweek. The ALJ further found that Cody should not interact with the general public but could occasionally interact with coworkers and

supervisors and found that he could respond appropriately to supervision, coworkers, and usual work situations. R. 20.

Cody argued to the magistrate judge that the ALJ failed to explain how she arrived at Cody's RFC given her findings that he had moderate impairments in concentration, persistence and pace and a moderate impairment in his ability to interact with others. The magistrate judge found that the ALJ supported her findings by noting that his mental status findings were generally benign other than some anxious tendencies and he did not appear to have difficulty interacting with examining or treatment providers. In addition, the ALJ gave great weight to the opinions of the State Agency consultants who opined that Cody could perform simple, unskilled work with no requirement that he interact with the public, and also that he could attend to simple work tasks for two-hour periods over a normal workday, with occasional interruptions. The magistrate judge concluded that the ALJ had provided support for her conclusions through references to Cody's treatment notes, his testimony, and the medical opinion evidence. ECF No. 19 at 11.

In his objections, Cody asserts very broadly that the magistrate judge erred in concluding that the ALJ had adequately supported her determination of Cody's RFC, but with one exception, points to nothing in the record to support his assertion. The court has reviewed the record and agrees with the magistrate judge that the ALJ explained that the limitations she assessed were based on his mental status examinations, R. 21, 377-380, 398, 407-408, 412, 388, 414, 421, 426, and on the opinions of the state agency consultants. R. 22, 76-79, 103, 104-106. The court finds no error in the magistrate judge's assessment.

8

Cody argues more particularly that the magistrate judge erred in finding that a discrepancy between the state agency psychologists' undefined use of the term 'occasional interruptions' and the ALJ's RFC limitation of 'two-hour segments with normal breaks' does not amount to an inadequate explanation of the ALJ's RFC findings warranting remand. ECF No. 20 at 2. Cody pointed out to the magistrate judge that the state agency consultants found that Cody would attend simple work tasks for two-hour periods over a normal workday, with occasional interruptions. R. 78, 93, but provided no clarification about what they meant by "occasional interruptions" and did not explain how often the interruptions would occur. Cody then argued that under Social Security regulations, "occasional" is defined as from very little to up to one-third of the workday, which he argues indicates that he could potentially be off task a rate unacceptable to employers.

The magistrate judge disagreed. He first noted that an ALJ is not required to adopt wholesale every portion of a physician opinion given great weight, citing Torres v. Saul, No. 2:19-cv-2000, 2020 WL 6264985 at *11 (D.S.C. July 22, 2020). He then cited Moore v. Saul, 822 F. App'x 183, 186 (4th Cir. 2020) (per curiam), abrogated on other grounds by Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), for its comment that "it is unreasonable to expect that the ALJ will recite every recommendation in every opinion and provide different reasoning for accepting or rejecting each portion." The magistrate judge determined that the ALJ developed the specific RFC limitation of performing simple, unskilled work and concentrating for two-hour periods over a normal workday, with normal breaks, after considering not only the physician consultants' opinions, but also the medical evidence and Cody's allegations. ECF No. 19 at 10.

Cody objects that the magistrate judge's reliance on Moore was error because Moore is distinguishable from his case. In Moore, an ALJ gave great weight to the opinion of a treating care giver but did not directly address the care giver's list of possible accommodations. The plaintiff argued that it was error for the ALJ to not specifically address the part of the opinion that included work accommodation suggestions. Moore, 822 F. App'x at 184-185. The court found that while the ALJ did not directly address the list of work accommodations, the accommodations did not appear to be limitations on Moore's ability to work. Id. at 185. The court concluded that the failure to consider short-term, possible accommodations that were generally irrelevant to Moore's RFC was not error. Id. at 186.

Cody argues that because the issue of his ability to sustain work activity is not irrelevant, the magistrate judge erred by failing to address the fact that the ALJ adopted the restriction regarding attending, persisting, and concentrating for two-hour segments from the state agency consultants, but did not address the "occasional interruptions" caveat they put on the finding. He reasserts his argument that "occasional" as defined by the Social Security Administration could mean up to one-third of a day and that if he were off task up to one-third of the day, he would not be employable.

Cody does not provide a citation for his definition of "occasional," but the court notes that in Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996), "occasionally" is defined in terms of a person's ability to do sedentary work, where walking and standing are required "occasionally" with that term being defined as "occurring from very little up to one-third of the time." SSR 96-9P at *3. However, there is no reason to believe that the state agency consultants were relying on that definition of the word when determining that Cody would

10

have "occasional" interruptions from his anxiety and mood symptoms because they were not assessing his ability to do sedentary work. In fact, it would be inconsistent to find that they were indicating that Cody might be interrupted by his symptoms up to one-third of the day when they both determined that he was not disabled. R. 81-83, 108-111.

In any event, the final determination of disability is made by the ALJ, who is not bound by a medical source opinion nor required to adopt an opinion in its entirety. Torres, 2020 WL 6264985 at *11 (citing Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011); Newton v. Saul, No. 9:18-CV-1608-CMC-BM, 2019 WL 3769880, at *9 (D.S.C. July 11, 2019), adopted, 2019 WL 3766480 (D.S.C. Aug. 8, 2019); Goff v. Saul, No. 2:18-cv-03313-TLW-MGB, 2020 WL 2476814, *13 n. 2 (D.S.C. Jan. 28, 2020); Fray v. Berryhill, No. 6:16-CV-2916-TMC, 2018 WL 1224687, at *3 (D.S.C. Mar. 91, 2018)). The ALJ in Cody's case supported her RFC with citation not only to the opinions of the state agency consultants, but to the medical evidence in the record and statements by Cody. The court finds that the magistrate judge did not err in finding that the ALJ's determination that Cody can attend, persist, and concentrate for two hours with normal breaks is supported by substantial evidence.

Cody also argued to the magistrate judge that the ALJ did not show how she arrived at her conclusion that the limitations of no interaction with the public but occasional interaction with co-workers and supervisors accommodates or addresses Cody's limitations in interacting with others. The magistrate judge found that the ALJ explained that Cody alleged significant anxiety in dealing with the general public but had no objective difficulty interacting with medical treatment providers. The ALJ also discussed Cody's subjective complaints, medical

11

history, and the opinion evidence in her decision. The magistrate judge concluded that the ALJ provided the narrative discussion called for in SSR 96-8P.

The court agrees with the magistrate judge that the ALJ adequately explained her reasoning in determining that Cody could do work where he has no interaction with the public and could occasionally interact with coworkers and supervisors. At Step 3 of the sequential evaluation, when she found he was moderately limited in his capacity to relate to supervisors, coworkers, and the public, the ALJ commented that Cody generally appeared pleasant and cooperative during encounters with health care providers. The providers generally noted no serious deficiencies in his eye contact, speech, or overall behavior. In addition, he reported socializing with family and friends and interacted with the public to some extent when shopping for groceries and other necessities.

At Step 4, the ALJ summarized Cody's medical records showing that despite his anxiety, at his medical appointments he appeared well, was in no acute distress, had good eye contact, and was alert and oriented. The ALJ commented that despite Cody's consistent complaints about symptoms related to anxiety and/or depression and his lengthy treatment history for anxiety and depression, overall, the evidence failed to produce the severity alleged by Cody. "His mental status findings were generally benign other than anxious tendencies, and he did not appear to have difficulty interacting with examining or treating sources." R. 22. In addressing the state agency consultant's opinion that Cody could do work with no public interaction requirements, she found that the limitation was reasonable given his consistent complaints of anxiety.

The court finds that the discussion by the ALJ adequately explains why she limited Cody to jobs involving no interaction with the public and occasional interaction with supervisors and coworkers. Cody's objection to the magistrate judge's finding is **OVERRULED.**

### B. Subjective Allegations

The regulations that were in effect at the time Cody filed his claim provided the following discussion of how the Social Security Administration analyzes subjective allegations of symptoms:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work . . . . We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you . . . . We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory

> findings and other evidence to decide how your symptoms affect your ability to work . . . .

20 C.F.R. § 416.929 (2011).

Cody's subjective complaints include constant anxiety, panic attacks, constantly feeling threatened, loss of interest in activities, sleeping a lot, feeling confused and nervous, and difficulty concentrating and focusing. R. 35, 38, 41, 45, 46. As discussed above, the ALJ stated that she found that although Cody complained about severe symptoms from anxiety and depression, his mental status findings were generally benign and he did not appear to have difficulty interacting with examining or treating sources. In addition, the ALJ cited the opinions of the state agency consultants regarding Cody's ability to do simple, unskilled work tasks with limits on his interaction with other people.

Cody argued to the magistrate judge that the ALJ failed to build a logical bridge between the evidence and her finding that his allegations were not fully accepted. Cody cited to his reports to his health care providers of "crippling anxiety," most notably in social situations, difficulty concentrating, fears of leaving home and driving, at least one panic attack per day, some instances of suicidal ideation, and depression screening tests noting moderate to severe depression.

In finding that the ALJ's opinion was supported by substantial evidence, the magistrate judge noted that the ALJ followed the two-step analysis to consider Cody's subjective allegations and determined they were not entirely consistent with the medical evidence in the record. The magistrate judge further noted that Cody had not pointed to any subjective evidence that the ALJ had failed to consider but had simply asserted that the ALJ erred in determining that the objective findings were generally benign. The magistrate judge concluded

that Cody was asking the court to reweigh the evidence, which is not the standard of a social security appeal.

Cody objects to that conclusion and reasserts her argument that the ALJ ignored substantial evidence of record in arriving at her conclusion that his mental status was generally benign. However, the ALJ noted that Cody said he had crippling anxiety, especially in social situations but also noted that he interacted well with his health care providers. In her RFC finding she limited him to no contact with the general public and occasional interaction with coworkers and supervisors, indicating that rather than ignoring his complaints, she adjusted his RFC to account for them. The ALJ also acknowledged his complaints of difficulty concentrating by limiting him to jobs doing repetitive, unskilled work. In addition, although Cody did sometimes express thoughts about suicide, at other times he denied suicidal ideation. See, e.g., R. 387, 397, 408, 421. And although he said on one occasion that he had one panic attack per day, R. 397, he did not report such frequent panic attacks at every visit. See, e.g. R. 413, 416, 420, 439.

"[I]t is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.3d at 1456. Courts do not determine whether a claimant is disabled, but whether a finding that he is not disabled is supported by substantial evidence and was based upon a correct application of the relevant law. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The court agrees with the magistrate judge that the ALJ adequately supported her determination that Cody's subjective allegations were not fully supported by the record. The court finds that she did not ignore evidence supporting his allegations but rather weighed the evidence and

adjusted his RFC accordingly. Therefore, the court **OVERRULES** Cody's objections to the magistrate judge's finding on this issue.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 03-15-2021

Michael F. Urbanski
Chief United States District Judge